Good morning to the court. My name is Lauren Cusick, arguing on behalf of Jimmy Salcedo. If I may, I'd like to reserve two minutes at the end of my argument. Counsel, be sure and watch the clock. It'll count down for you there. It'll tell you the remaining minutes. Thank you. Mr. Salcedo's sentence was both procedurally and substantively unreasonable, and I'll focus on two ways in which the district court erred. The first is that the district court incorrectly calculated Mr. Salcedo's criminal history category at sentencing in two different ways. And the second is that the district court failed to consider the 3553 sentencing factor of unwarranted sentencing disparities between similarly situated offenders. But beginning with the first error, the district court first erred by incorrectly assessing Mr. Salcedo three points for what it deemed to be a 459-day county jail sentence. Well, isn't that what it is? Isn't it 459 days? Isn't that the sentence as such? The judgment sheet from that sentence reflects 307 days actually served, and there was no dispute that it was a time-served sentence. Yeah, but let's take it step by step. The total sentence on that sentencing sheet was 459 days? Yes. And that sentence reflects a 307-day sentence served plus 152 days of statutory credit, which were added to the time that Mr. Salcedo had served to total 459 days. Isn't that just a computation? It is a computation. In this case, normally what happens is the sentencing court will sentence someone, and the person gets credit and gets released at some point earlier than you might anticipate based on the actual sentence. In this case, Mr. Salcedo was getting a time-served sentence. He had served the 307 days, and the clerk added the statutory credits to end up with a sentence of 459 days. But he was being released that day, and the judgment reflects that he was being released that day. Well, what's your argument or your position? Your position is that what's determinative is the actual time served as opposed to the sentence imposed? Is that your argument? In this case, because 459 days would have been an illegal sentence under State law, the court has to look at what the court actually intended. But nobody challenged it as an illegal sentence, right? At the time, no. Well, at any time when it could have been. There was no appeal. There was no habeas, right? Right. So are you saying we can sort of, you know, entertain like a collateral attack to the legality of that sentence at this stage? No. Our argument is, I think, better characterized. If your argument is no, then we have to accept that it's a legal sentence, don't we? I think the court can read that judgment to reflect it as a 307-day sentence, which is what we argued to the district court. Because 459 days would be illegal, because it was clear that 307 days would be illegal. Even though the judgment says 459 days? Correct. We should ignore that. Well, the judgment also reflects a 307-day sentence served. And in Gomez-Leon, where the Ninth Circuit originally held that this type of sentence would be illegal, you had two judgments, one of which read 365 and one of which read 120. Which is not the case here. Here the sentence is even more facially illegal than the sentence being discussed in Gomez-Leon. And because of that, I think also because the judgment itself reflects that at the time that Mr. Salcedo was being sentenced to the 307-day term, he was also placed on probation, which was terminated that day, and that the imposition of the sentence was suspended during the probationary period, that's another way in which the court can read this as a 307-day sentence, which would be a legal sentence, and which better reflects what the sentencing court was trying to do. The fact that the 152 days were, in fact, suspended both on the judgment sheet and in reality because Mr. Salcedo was released reflects, in reality, a 307-point day sentence. Do we have a sentencing hearing transcript or something that might tend to justify your assertion that this is what the court was intending to do? No, there's not a transcript in the record before the court. I think the best indication that the court was intending to impose a 307-day sentence is the fact that it was a time-served sentence and that Mr. Salcedo was released. The other fact that this court can look at, which is in the pre-sentence report, which is before the court, is that the same day that Mr. Salcedo received this sentence, he received a 16-month prison sentence on another case. He was concurrently sentenced on two cases. So the fact that the court chose to impose a prison sentence in the other case and a 307-day time-served sentence in this case further reflects the notion that the court didn't intend to impose a sentence of over a year in the case. Were they consecutive? No, they were concurrent. And the 16-month sentence was, in effect, a paper commitment because he was released on that day on that sentence as well. But the actual judgment in the other case was a 16-month judgment, which is reflected in the pre-sentence report. The second error that the sentencing court made was in assessing Mr. Salcedo, two points for committing the current offense while serving a sentence of imprisonment. And the burden was on the government to establish that Mr. Salcedo committed this offense while serving another sentence. And the government's assertion was that Mr. Salcedo committed this offense on March 10th of 2008. But didn't he plead guilty? He did. And in the pleading, he agreed? I guess it was the guilty of the indictment, which had specifically March 10th, 2008? It says, Honor, about March 10th. Yes. Well, doesn't that foreclose the argument? By pleading guilty to the indictment, Mr. Salcedo pled guilty to the essential elements of the offense. And under Ledbetter and under Lellis, the date of the offense isn't an essential element. So even had Mr. Salcedo gone to trial just to contest that issue, the government would not have been required to prove at a trial that the offense occurred on that date. And he did object at sentencing to a finding that the offense had occurred on that date. At his actual plea, at his guilty plea, he merely admitted the elements of the offense. He admitted that he had entered illegally and that he had previously been deported, but he did not admit what date that occurred on. And what was the district court's response to that challenge? The district court said that by pleading guilty to the indictment, he had admitted the date charged in the indictment. And there was no independent evidence before the trial court, before the sentencing court, as to when the offense was committed. The defense argued that the offense was committed because it's something of a legal fiction, because it's a found-in offense as opposed to when he actually reentered. The defense argued that... But the date of being found in becomes relevant in this collateral context, is it not? It does. And we argued that Mr. Salcedo should have been considered found when Sacramento County Probation contacted Immigration and alerted them that he was present. That would require us to ignore a recital in the indictment. Because it was not material to the guilty plea. The guilty plea was admitting the essential elements of the offense. If it's the case that by pleading guilty to the indictment, a defendant admits everything alleged in the indictment, we're in a difficult position, because things that the government might not be required to prove at a trial are then deemed admitted by a guilty plea. There's really no mechanism for Mr. Salcedo to have challenged the date of the offense, other than what we did, which was to challenge it at sentencing. By pleading guilty to the indictment, which charged on or about, Mr. Salcedo was not admitting that that was the date that the offense actually occurred. And in this context, it's knowledge that's not within Mr. Salcedo's control, because found in is really within the purview of Immigration. You're down to just below two minutes. If you want to reserve, you may do so, or not. Finally, I'll reserve probably one minute. The last thing I want to discuss is the district court's failure to address unwarranted disparity. And I'd just like to distinguish this case from Gonzales-Sotelo and the other cases, because Mr. Salcedo's argument to the district court was not that fast track itself creates unwarranted disparities, but that the district court must still look at the U.S. attorney's decision to offer fast track or not offer fast track in a given case, that it's not completely immune from analysis as to disparity. Let's look at it. First of all, that's a – that is a discretionary decision on the part of the U.S. attorney, right? It is, but in the – What do you mean, then, in that context why district court has to look at it? Those disparities that were warranted by Congress or sanctioned by Congress in passing the PROTECT Act are disparities related to resolving cases quickly or the fact that fast track exists or doesn't exist within certain districts. But once the U.S. Attorney's Office starts adding different conditions to offering that reduction, that aren't sanctioned by Congress or that weren't anticipated by the PROTECT Act, then we reenter the area of disparities that aren't congressionally sanctioned and that very well may be unwarranted. And the district court didn't do that analysis in this case, didn't discuss whether this disparity between Mr. Salcedo and similarly situated defendants was warranted or not. Thank you. Thank you, counsel. We'll hear from the governor. May it please the Court. Michael Anderson on behalf of the United States. The defendant makes two arguments that have just been discussed regarding criminal history category and calculations. The first involves one point, and that's the extra point for a 459-day sentence, two versus three points. That point alone is not enough to change the criminal history category for the defendant, so it would be subject to the harmless error analysis. In addition, the second issue appears to raise two points, but in preparation for oral argument, it became apparent that it actually only involves one point. That's because under USSG 4A 1.1E, that's in PSR paragraph 39, only one point is assessed under that subsection. If the defendant is successful on the challenge to subsection D, then two points would be assessed under subsection E. Therefore, the criminal history category would not change unless both issues are Are you conceding your opponent's point, then? No, no, no, Your Honor. I'm going to address both on the merits, but what I'm saying is that the criminal history category calculation under USSG 4A 1.1E, which the defendant does not challenge, would actually increase to two. He would have more criminal history points by taking away the points for subsection D, which are the found-in date points, if the defense was to be successful with that. They would still have to win on both issues in order to have enough criminal history category points changed to change the criminal history category. So I would like to address both on the merits because the defendant needs to win at win both in order to be successful. The first is the 459-day sentence. The district court made a factual finding, which was reviewed by this Court for clear error that there was, in fact, a total term of 459 days imposed. I have trouble with that. How does this become a factual finding? It is a judgment of a sentence, and you have to deal with the sentencing document. Is that a finding of fact? Yes, Your Honor, I believe it is. The reason is that the Court has to make a determination as to what actually happened at the State court level. And based on the exhibits presented to the district court, which are before the Court here today in the supplemental excerpt of record at pages, in the supplemental excerpt of record, based on those, the Court can determine that there was a 459-day sentence actually imposed. And why isn't this really a question of law? Well, there is a question of law also built into this, which the defense raises, which is whether or not this is a legal sentence. And that's really the second part of the analysis because in that part of the analysis, the defendant bears the burden of showing by preponderance that this is an illegal sentence. There's a presumption of regularity, which is attached to these State court sentences as cited by the government in Malloy. And the defendant's burden comes from U.S. v. Allen and U.S. v. Newman, also cited by the government. Here, the sentence is a legal sentence. A 459-day sentence can be imposed by the State court, as shown by People v. Johnson, also cited by both parties. In that case, a sentence in excess of 365 days was imposed in two separate instances. Now, the defense, the appellant has raised the fact or the argument that Gomez-Leon states that this is an illegal sentence. That is not, in fact, the case. Gomez-Leon acknowledged that a sentence in excess of 365 days was a legal sentence under California law. However, Gomez-Leon dealt with a different situation. In that situation, there was an ambiguous record as to what the total sentence imposed was, because it was imposed in two separate increments, first a 365-day sentence and then a second imposition of a sentence of approximately 150 days. That sentence, it couldn't be determined if that was part of the initial 365 days or if it was not. So the court in that situation had a very different consideration to make. Here, the facts are clear that a 459-day sentence was imposed, and it was a legal sentence. Gomez-Leon also is different in that the United States bared the burden of showing that it was an actual 459-day sentence that was imposed, and that's because the modified categorical approach was being applied. This is different than the criminal history calculation that's currently being addressed. The second issue with regard to the criminal history category that's raised by the defense is the date of the offense. Here, the defendant both pled to the indictment, which charged the March 10th date, and did not ---- Kennedy What about her point that, well, the date is not an essential element of the crime? That's correct. She is correct that it's not an essential element of the crime in a 1326 offense. However, the defendant also did not object to a factual basis that was taken in the plea regarding the March 10th, 2008 date. It was only later that the defense raised the issue that there had been purported notice from the State Probation Officer to immigration authorities. In this case, they said INS, although that was incorrect. INS no longer existed. That ---- Kennedy Now, to get to the factual basis, do we need the transcript? It's been included by the government in the supplemental excerpt of record. Kennedy Okay. Do you know where it is, what the reference is? The page number is pages 9 and 10. Kennedy Okay. There ---- But beyond that, there also appears to be no dispute from the appellant here that the defendant was actually found by immigration authorities on March 10th, 2008, what the defense's argument appears to be more of a constructive notice argument, stating that based on the information provided by the State or purported to be provided by the State, the defendant or the immigration authorities should have known or should have been aware of the defendant's presence of the United States. However, the standard that's generally applied here, and this standard is talked about in the U.S. v. Hernandez case cited by the government at page 20 of its brief and also cited in many other districts, cases cited by both the defense and the government, the standard is that the alien is encountered by the immigration authorities in the United States, and it has to be immigration authorities, not local police officers, and that the immigration authorities know that the defendant is an alien or through the application of the typical diligence of law enforcement officers, should have known that the defendant is an alien. Here we're talking about a time period which actually is only six days long and includes a weekend. This short time period and the limited knowledge that was passed from state probation to immigration authorities is not sufficient under the law to provide that sort of constructive notice to the government or to immigration authorities of the defendant's not only presence in the United States, but his status as an alien, something that would normally require an interview with the defendant or the taking of fingerprints and further checking of his immigration status. The third issue, and this is separate from the criminal history category calculations, the issue raised with the application of section 3553A6, unwarranted disparities. This argument has been foreclosed by Gonzalo Sotelo. Defense essentially raised the argument that the government did not have the discretion or that the government's discretion should be reviewed for unwarranted disparities in the application of this section. That, based on the Gonzalo Sotelo case, which is binding precedent on this court, is not correct. In fact, the government, as long as it does not use an improper motive or bias, a standard that the district court acknowledged, may decide not to grant fast track reductions to certain defendants. And we can go even further. Even the districts that, or the circuits that have declined to follow the Ninth Circuit's application of the fast track disparities in Gonzalo Sotelo have found that the government can properly deny fast track dispositions to defendants who have significant criminal histories because they are not differently situated, because they are differently situated from defendants who have less serious criminal histories that are given the fast track. Here, the defendant had a very significant criminal history involving multiple incidents of domestic violence. The PSR reflects not only the convictions but also the details and facts of those prior incidents, and they're quite severe and serious incidents involving violence towards women that the defendant had cohabitated with or been married to. For that reason, the defendant is in a different situation than the other defendants who do receive the fast track reduction. That means that any disparity between that defendant who has a higher criminal history category and a much more serious criminal history and defendants who have less of a criminal history is not unwarranted in any event, despite Gonzalo Sotelo. But the question is, what on the record shows that the district court considered that? Well, the district court did talk about the advisory guideline range in the sentencing, did talk about the 3553 factors, and specifically talked about the court's ability to deviate from the guideline by saying this is a case that does not, in my opinion, warrant a deviation from the guidelines. So in doing that, the court reflected that it was, in fact, considering these issues and considering the issues it had to, and came to an independent judgment that the guidelines in this case were appropriate for this defendant. So what I'm saying is this is one of those cases where just that brief comment is sufficient. Yes, Your Honor. I see my time is up, but if I could answer your question. This is a case where, as the court has seen through many of its precedents, there is only and needs to be a limited addressing of the issues that are raised by the defendant, sufficient to show that the court did consider them. And in this case, the court spent several pages of transcript talking about each and every one of the issues that are now raised before this Court. Thank you. Thank you, counsel. Ms. Cusick, you have 17 seconds. I'll do my best. With respect to the issue where the government finished off, I would just note that the district court's analysis of unwarranted disparity in particular was just to say that it was within prosecutorial discretion whether to offer fast track or not. The district court's failure to disagree with the guidelines was in respect to a pretty lengthy challenge to the substantive reasonableness of the underlying guideline, and the district court declined to disagree with the guideline itself. But with respect to fast track, the only analysis that the district court did was to say that it was within the prosecution's discretion when to offer that departure and that it wasn't for the district court to analyze that. And it's that failure to analyze the factor and to analyze whether there was a disparity that we challenge. Thank you. Thank you very much, counsel. The case just argued will be submitted for decision.
judges: Bennett, O'scannlain, Tashima